Ralph LA CHANCE, Plaintiff-Respondent,

EMPLOYERS INSURANCE OF WAUSAU, Intervenor-Respondent,

v.

THERMOGAS COMPANY OF LENA, Defendant-Third-Party Defendant-Appellant,

CANADIAN UNIVERSAL INSURANCE COMPANY, LTD., a corporation, and L.B. White Company, Inc., a corporation, Defendants and Third-Party Plaintiffs.†

Court of Appeals

*No. 83–1436. Submitted on briefs April 24, 1984.— Decided September 4, 1984.*
(Also reported in 357 N.W.2d 1.)

---

† Petition to review denied.

570

572

For the appellant the cause was submitted on the briefs of *Condon, Hanaway, Wickert & Fenwick, Ltd.,* of Green Bay.

For the respondent the cause was submitted on the brief of *Kaftan, Kaftan, Kaftan, Van Egeren, Ostrow, Gilson & Geimer, S.C.,* of Green Bay.

For the intervenor-respondent the cause was submitted on the brief of *Law Offices of Robert S. Schuch* of Wausau.

Before Foley, P.J., Dean and Cane, JJ.

DEAN, J. Thermogas Company of Lena appeals a judgment awarding Ralph La Chance damages for injuries he sustained in an LP gas explosion that occurred when he tried to relight a gas torch in a wetwell containing an accumulation of propane. Thermogas supplied the propane for the construction project. La Chance contends that Thermogas negligently failed to warn of the dangerous propensities of LP gas. The following issues are raised:

1. Whether Thermogas owed a duty to La Chance.
2. If so, whether Thermogas breached this legal duty.
3. Whether public policy requires that there be no liability.
4. Whether the trial court unduly weighted instructions in favor of La Chance and failed to give appropriate instructions regarding the duty of a seller of LP gas.
5. Whether the jury improperly apportioned the parties' negligence.
6. Whether there is sufficient credible evidence to support the jury's award for past wage loss and lost future earning capacity.
7. Whether the greater causal negligence of La Chances' employer should bar application of the distribution provision of sec. 102.29(1), Stats., and reduce the judgment.

We affirm the judgment of the trial court.

*Negligence*

A successful action for negligence requires a duty of care on the part of the defendant, a breach of that duty, and a causal connection between the conduct and the injury. *Anderson v. Green Bay & Western Railroad,* 99 Wis. 2d 514, 516, 299 N.W.2d 615, 617 (Ct. App. 1980). Duty is the exercise of reasonable care whenever it is foreseeable that one's conduct may cause harm to another. *Walker v. Bignell,* 100 Wis. 2d 256, 263, 301 N.W.2d 447, 452 (1981). Negligence consists of failing to use the degree of care that would be exercised by a reasonable person under the circumstances. *Ceplina v. South Milwaukee School Board,* 73 Wis. 2d 338, 342, 243 N.W.2d 183, 185 (1976).

The risk of injury to workmen caused by exploding settled propane was foreseeable so as to trigger a duty of reasonable care to prevent such harm. Thermogas knew of the dangerous propensity of LP gas to settle in low areas. It was also aware of the wetwell, which formed a natural settling area for propane. Thermogas supplied the 100-pound LP cylinders used with portable heaters and torches and understood that such equipment was used throughout the construction site. Although the torch, which was the source of the released propane, was improperly operated in the poorly ventilated wetwell, the risks associated with propane were foreseeable.

The jury's finding that Thermogas failed to exercise reasonable care in supplying LP gas is supported by credible evidence. This court must affirm a jury's answer to a special verdict question if there is credible evidence to support the jury's finding. *See Lueck v. City of Janesville,* 57 Wis. 2d 254, 262, 204 N.W.2d 6, 10 (1973).

The evidence shows a lack of due care because LP gas is a dangerous agent, and greater caution and vigilance are required in dealing with this commodity than are required in ordinary affairs of life and business. *Brown v. Wisconsin Natural Gas Co.,* 59 Wis. 2d 334, 341, 208 N.W.2d 769 (1973). Thermogas made twenty deliveries of LP gas to the construction site, yet failed to warn of the propane's dangerous properties and its tendency to settle in low areas. Information that LP gas is heavier than air would have warned La Chance of the futility of airing out the wetwell by removing the top cover. Safety efforts by Thermogas would have been relatively easy and inexpensive.

Thermogas argues that the stenching of the gas was an adequate warning or that there is no duty to warn members of a trade about dangers generally known to that trade. *Shawver v. Roberts Corp.,* 90 Wis. 2d 672, 686, 280 N.W.2d 226, 233 (1979). Adding an odor to the gas may not be an adequate warning in certain instances. Here, the odorant used became imperceptible because it also settled. While *Shawver* is a correct statement of the law, credible evidence in this case shows that the dangers of propane use were not known by La Chance, a carpenter and millwright for twenty-eight years, nor appreciated by the general construction industry.

Public policy is not a bar to liability. Cases in which recovery is denied for public policy reasons are infrequent and present unusual and extreme considerations. *Stewart v. Wulf,* 85 Wis. 2d 461, 479, 271 N.W.2d 79, 88 (1978). Literature available to the gas supply industry warns about the possibility of settled propane exploding. Gas suppliers are in a position to guard against such accidents by means of a simple warning that LP

gas is heavier than air and tends to settle in low areas. This is not an unreasonable duty. Gas suppliers need not warn about other characteristics generally well known. Nor will a failure to warn about propane's settling characteristic constitute legal cause in every case. But in cases such as this one, a warning about where to smell is a necessary addition to odorizing LP gas.

## Jury Instructions

Thermogas complains that the trial court gave Wisconsin pattern jury instructions 3244, 3246, and 3262 that were inapplicable given the facts of this case.[1] Thermo-

[1] The trial court gave the following instructions to the jury: Wis JI—Civil 3244 (1971):

3244 NEGLIGENCE: DUTY OF MANUFACTURER (SELLER) TO GIVE ADEQUATE INSTRUCTIONS AS TO THE USE OF A COMPLICATED MACHINE (PRODUCT)

A manufacturer or seller, either one, in the exercise of ordinary care, has the duty to give proper instructions as to the use of a machine or product where the mechanism of the machine or product is so complicated that it may not be readily understood by the user thereof, and the manufacturer, seller, was aware of or ought, in the exercise of ordinary care, to have been aware of the dangers involved.

Wis JI—Civil 3246 (1971):

3246 NEGLIGENCE: DUTY OF MANUFACTURER (SELLER) WHO UNDERTAKES TO GIVE INSTRUCTIONS AS TO THE USE OF A MACHINE (PRODUCT)

More on negligence, when a manufacturer, or seller, either, undertakes, by printed instructions or otherwise, to advise the user of the machine or product of the proper methods of its use, such manufacturer or seller, in the exercise of ordinary care, has the duty to give accurate and adequate information with respect to the use thereof and possible dangers involved with respect to the use of such machine or product.

Wis JI—Civil 3262 (1971):

gas also contends that the trial court erred when it did not give Thermogas' requested instruction on the duty of a seller of LP gas, a modified version of Wis JI—Civil 1002 (1971).

■

It appears from the record that Thermogas did not object to instruction 3244 nor to the court's use of an unmodified 1002. The failure to object to a jury instruction in a timely fashion generally constitutes a waiver of the objection. *Kutchera v. State,* 69 Wis. 2d 534, 551, 230 N.W.2d 750, 759 (1975).

■

Additionally, the trial court's instructions properly informed the jury on the duty Thermogas owed to La Chance. A trial court may exercise wide discretion concerning both choice of language and emphasis in issuing jury instructions based on the facts and circumstances of a case. *State v. Vick,* 104 Wis. 2d 678, 690, 312 N.W.2d 489, 495 (1981). We will not reverse for error unless it is probable that the jury was misled to a result other than if the error had not occurred. *See Hoeft v. Friedel,* 70 Wis. 2d 1022, 1037, 235 N.W.2d 918, 925 (1975).

---

3262 STRICT LIABILITY: DUTY OF MANUFACTURER (SUPPLIER) TO WARN

Once again on negligence, as it relates to both of these parties: a manufacturer or supplier of a product must give warning of any dangerous propensities of an article produced or sold by him inherent in the product or in its use of which he knows or should know, in which the user of the product would not ordinarily discover. The warning should be such that if followed would make the product safe for users. To comply with this duty the manufacturer or supplier must appropriately label the product, giving due consideration to the likelihood of accident and the seriousness of consequences from failure to so label it as to warn of any dangers that are inherent in it and its use or that may arise from the improper handling or use of the product.

Here, the trial court used pattern jury instructions to instruct on the duty of a seller of a product. It is not denied that Thermogas is a seller and that LP gas is a product. Thermogas' objection to 3244 is based on its argument that the dangerous propensities of propane gas are known to the general construction industry; an argument that is not supported by the evidence in this case. Wis JI—Civil 3246 correctly states the duty of care required if the jury found that Thermogas had instructed La Chance and other employees in the use of LP gas. Wis JI—Civil 3262 (1971), deals with a supplier's duty to warn with regard to strict liability. The trial court, however, changed the instruction to conform to the negligence claim of the case. The instruction otherwise parallels Wis. JI—Civil 3242 (1971), which Thermogas did not object to.

The trial court also instructed the jury from the first two paragraphs of Wis JI—Civil 1002. Thermogas requested that three additional paragraphs be given. The first paragraph is unrelated to the issue of what warning is necessary when a company undertakes to supply LP gas. The second paragraph detailing a gas company's duty to inspect was also irrelevant. Elements of the third paragraph were given elsewhere or were not warranted by the evidence. *See West Bend Mutual Insurance Co. v. Christensen,* 58 Wis. 2d 395, 398–99, 206 N.W.2d 202, 204 (1973). Thermogas argues that its requested instruction was necessary to counter undue prominence given to La Chance's position because two instructions repeated that the consumer must guard against dangers that are obvious and understood. *See* Wis. JI—Civil 3254 and 3268 (1971). These instructions also doubly emphasize La Chance's duty to exercise ordinary care for

his own safety and are not, therefore, unduly weighted in his favor.

*Apportionment of Negligence*

The jury's verdict apportioning ten percent negligence to La Chance and twenty-five percent to Thermogas is supported by the evidence. A jury verdict apportioning negligence will be sustained if there is credible evidence that under any reasonable view supports the verdict and removes the question from the realm of conjecture. *Sabinasz v. Milwaukee & Suburban Transport Corp.*, 71 Wis. 2d 218, 222, 238 N.W.2d 99, 101 (1976). Although Thermogas argues that other evidence indicates even greater negligence on the part of La Chance, this evidence was before the jury and the apportionment of negligence is a matter peculiarly within the province of the jury. *DeGroff v. Schmude*, 71 Wis. 2d 554, 562, 238 N.W.2d 730, 734 (1976). We cannot assume that the jury ignored evidence adverse to La Chance, and we cannot say that La Chance's negligence exceeded Thermogas' negligence as a matter of law.

Thermogas argues, however, that the jury's answers were influenced by the trial court's erroneous instructions and by two photographs of La Chance's hands, taken shortly after the accident, which the trial court permitted to go into the jury room. We have already concluded that the instructions were not erroneous. The exhibits were submitted for the legitimate purpose of illustrating the extent of La Chance's injuries. The submission of exhibits to the jury rests in the sound discretion of the trial court, and the trial court concluded that the photographs would aid, rather than unduly

prejudice, the jury. *See Valiga v. National Food Co.*, 58 Wis. 2d 232, 249, 206 N.W.2d 377, 387 (1973).

### Award for Past Wage Loss and Lost Future Earning Capacity

The jury's award for lost wages and for loss of future earning capacity is supported by credible evidence. *See Roach v. Keane*, 73 Wis. 2d 524, 538–39, 243 N.W.2d 508, 516–17 (1976). Lost earning capacity is the difference between earning capacity before the accident and earning capacity after the accident attributable to the injury. *Fischer v. Cleveland Punch & Shear Works Co.*, 91 Wis. 2d 85, 99, 280 N.W.2d 280, 287 (1979). In making their finding, the jury must by necessity deal in some probabilities. *Reinke v. Woltjen*, 32 Wis. 2d 653, 660, 146 N.W.2d 493, 497 (1966). La Chance presented witnesses who testified concerning the nature, prognosis, and severity of his injuries and the extent of his loss. The jury was entitled to believe La Chance's experts who testified that he will be unable to return to suitable work and that he will continue to suffer functional limitations caused by the injury. Evidence was presented on hourly rates under area union contracts. From this evidence, the jury could reasonably conclude that La Chance suffered permanent injuries and a $127,500 loss of past wages and future earning capacity.

### Distribution of Judgment Proceeds

The distribution of the judgment proceeds under sec. 102.29(1), given the third-party liability of Thermogas, is not altered by the jury's finding that the negligence of La Chance's employer exceeded that of Thermogas.

In addition to bringing this action against Thermogas, La Chance made a claim for worker's compensation under ch. 102, Stats., against his employer and its compensation insurance carrier. Such multiple claims are permitted. Section 102.29(1), Stats. In such cases, sec. 102.29(1) provides for distribution to the insurer of part of the employee's recovery against the third party, in this case Thermogas.

Thermogas argues that because the jury found La Chance's employer fifty-five percent negligent and Thermogas only twenty-five percent negligent, the employer's compensation insurer should not be entitled to any reimbursement and the judgment should be accordingly reduced. While the effect of the distribution of damages might appear inequitable to Thermogas, an exception is not provided for in the all-pervasive legislative scheme. Section 102.03(2), Stats., makes the payment of worker's compensation the employer's exclusive liability for work-related injuries and denies any remedy of a third party against an employer. *Mulder v. Acme-Cleveland Corp.*, 95 Wis. 2d 173, 177, 290 N.W.2d 276, 278 (1980). The operation of sec. 102.03(2) and sec. 102.29(1) requires that "the compensation paid in lieu of damages by an employer who is subsequently found negligent must be repaid to it from damages collected from a third party tortfeasor whose concurrent negligence may be relatively inconsequential." *Mulder*, 95 Wis. 2d at 179, 290 N.W.2d at 279; *see also Ladwig v. Ermanco, Inc.*, 504 F. Supp. 1229, 1238 (E.D. Wis. 1981); *Schuldies v. Service Machine Co.*, 448 F. Supp. 1196, 1201 (E.D. Wis. 1976).

*By the Court.*—Judgment affirmed.